

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

September 11, 2015

**VIA ECF & BY HAND**

The Honorable Deborah A. Batts
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

Re: *United States* v. *Anthony Cuti*, 08 Cr. 972 (DAB)

Dear Judge Batts:

On May 8, 2015, the Government submitted a letter (the "May 8 Letter") regarding the issue of restitution to Duane Reade and Oak Hill Capital Partners ("Oak Hill") after the Second Circuit's partial affirmance and partial remand of this Court's restitution order.  The May 8 Letter set forth the Government's position that (a) certain categories of legal fees and expenses paid to counsel for Duane Reade (or Oak Hill on Duane Reade's behalf) are properly included in a restitution award; and (b) further information was needed before three categories of additional expenses (the "Additional Expenses") could be included.  For the reasons set forth below, the Government respectfully submits that, as detailed below, certain of these expenses may now properly be included in the restitution award and there are no issues of fact that require an evidentiary hearing.

**Background**

The procedural and factual background is described in detail in the May 8 Letter.  The facts relevant to the Additional Expenses are summarized here.

In 2005, Oak Hill (which had by then acquired Duane Reade) fired then-CEO of Duane Reade Anthony Cuti without cause.  In late August 2006, Duane Reade's general counsel received information about suspicious transactions made by Cuti related to credit and rebilling transactions.  Duane Reade's general counsel notified Oak Hill's outside counsel, Paul, Weiss, Rifkind, Wharton & Garrison, LLP ("Paul Weiss"), and Duane Reade's Audit Committee retained Cooley Godward Kronish LLP ("Cooley") and a forensic accounting firm, AlixPartners LLP ("AlixPartners"), to conduct an internal investigation ("Internal Investigation-1").  At about the same time, on September 1, 2006, Cuti filed an arbitration demand on Paul Weiss, which was retained to represent Oak Hill and Duane Reade in the arbitration (the "Arbitration").  In connection with the Arbitration, Paul Weiss retained data recovery firm Kroll Ontrack Inc. to extract documents from the hard drives of Cuti and certain other Duane Reade employees and process those documents into a user searchable database (the "Kroll Database"), which was launched in December 2006 or January 2007.  Accordingly, from late August 2006, Duane Reade had two law firms working on Cuti-related issues: Paul Weiss, which was primarily handling the Arbitration; and Cooley, which was handling the Internal Investigation.  In February 2007, Paul Weiss

uncovered evidence of additional wrongdoing by Cuti related to a real estate income transaction.  Paul Weiss initially conducted an investigation and then reported its findings to Cooley, who conducted an investigation ("Internal Investigation-2," collectively the "Internal Investigations").  In May 2007, Paul Weiss and Cooley met with the Government to discuss their findings.  The Government then commenced its own investigation, which resulted in the indictment and eventual conviction of Anthony Cuti, the defendant.  Thereafter, Oak Hill retained KPMG & PricewaterhouseCoopers ("PwC") to investigate and issue a restatement of Duane Reade's financial statements, which KPMG and PwC had previously prepared.

On May 13, 2013, this Court issued a final order of restitution for $7,615,217.90 (the "May 13 Order"), which included (1) legal fees and expenses paid to Paul Weiss, Cooley, and to attorneys for Duane Reade's employees; and (2) the Additional Expenses, comprised of: (a) costs incurred for the Kroll Database; (b) fees paid to AlixPartners; and (c) fees paid to KPMG & PwC.  On February 6, 2015, the U.S. Court of Appeals for the Second Circuit issued an amended opinion affirming in part and vacating in part the May 13 Order, and remanding the case to allow this Court in the first instance to determine whether the payment of fees and costs to counsel for Duane Reade and Oak Hill were necessary, meaning "expenses the victim was required to incur to advance the investigation or prosecution of the offense."  *United States* v. *Cuti*, 778 F.3d 83, 94 (2d Cir. 2015) (quoting *United States* v. *Maynard*, 743 F.3d 374, 381 (2d Cir. 2014)).

### Remand Proceeding

On May 1, 2015, on behalf of Oak Hill, Paul Weiss filed a declaration and supporting documentation (the "May 1 Declaration") in which it re-reviewed the relevant billing records, fees and expenses for Paul Weiss and Cooley and removed any that were either arguably unnecessary or redundant, resulting in total restitution of $5,267,192.60.[1]  Paul Weiss further requested inclusion of the Additional Expenses in a restitution award.  While Paul Weiss asserted that these costs were not the subject of the Second Circuit's remand, they argued that the Additional Expenses were "necessary" under the standard set forth in *Cuti* and *Maynard*.

The Government's May 8 Letter set forth its position that the Additional Expenses are subject to review on remand and that more information was required before the Additional Expenses could be deemed "necessary."  On May 21, 2015, Paul Weiss filed a supplemental declaration and supporting documentation (the "May 21 Declaration") providing factual justification for inclusion of the Additional Expenses.[2]  On July 4, 2015, Cuti filed a memorandum of law opposing restitution, including the Additional Expenses (the "Cuti MOL").  Finally, on August 7, Paul Weiss filed a declaration and supporting documentation (the "August 7 Declaration") providing, among other things, additional information supporting the inclusion of the Additional Expenses in the restitution order.

---

[1]   This total comprises $1,585,125 for Duane Reade's employees' legal fees and $3,682,067.60 for "necessary" work performed by Paul Weiss and Cooley.

[2]   The May 21 Declaration presses the argument that the Additional Expenses are not subject to review on remand, an argument the Government addressed and rejected for the reasons set forth in its May 8 Letter.

## Discussion

Subject to the specific deductions outlined below, the Government agrees with the Paul Weiss that the Additional Expenses were "necessary" and therefore properly included in the restitution order.

*The Kroll Ontrack Database*:

Oak Hill seeks $579,313.89 in restitution for expenses associated with the creation and use of the Kroll Database, a database of documents culled from the hard drives of Cuti and ten other Duane Reade employees. (May 21 Dec. at ¶ 14; August 7 Reply ¶ 44.) Although the Kroll Database was initially created for use in connection with discovery in the Arbitration, the documents loaded into the database were extracted from the hard drives of the Duane Reade employees who became subjects of the Government's investigation, including "significant witnesses in the Government investigation and trial, including CFO John Henry, Controller Chris Darrow and General Counsel Michelle Bergman." (May 21 Dec. at ¶ 14 .) Moreover, the contents of the entire database for the time period from January 1, 2000 to June 30, 2005 were produced—at Cuti's request—in the criminal case. (August 7 Reply ¶ 43.) Indeed, because the Kroll Database existed, this Court denied a request by Cuti to compel production of the Duane Reade employees' computer hard drives from which the data in the Kroll Database had been extracted. (August 7 Reply ¶ 43.)

Cuti now argues that any restitution awarded in connection with the Kroll Database should be awarded solely for the portion of the Kroll Database containing documents expressly related to issues in the criminal case. To that end, Cuti argues that Oak Hill must provide an allocation of costs between "that which was 'required' by the criminal investigation and that which was not." (August 7 Reply ¶ 41.) Such additional information is unnecessary. The database was launched in December 2006 or January 2007. In May 2007, the criminal investigation commenced and the Arbitration was stayed. From May 2007 forward, it is not disputed that "the sole purpose served by the database was to assist the Government in the investigation and prosecution of Cuti." (May 21 Dec. at ¶ 17.) Had the Kroll Database not existed, Duane Reade would have needed to create it in order to search for documents requested by the Government. The cost of the Kroll Database in the period preceding the initiation of the criminal investigation is $148,461.67. (May 21 Decl. at ¶ 16.) While the costs associated with extracting the documents from the hard drives and setting up the database unquestionably assisted the subsequent Government investigation—and likely reduced the costs ultimately incurred by Oak Hill— Oak Hill has not demonstrated that a specifically identifiable portion[3] of the $148,461.67 was

---

[3]    Paul Weiss argues that if an allocation of costs is required, the $148,461.67 should be split equally, asserting that such "allocation is based on the fact that we used the database for both minimal arbitration discovery and investigation purposes during that period." The *Cuti* decision noted that "the record on appeal" does not show when Paul, Weiss "shift[ed] its focus from a civil litigation defense to an internal investigation premised on a 'grounded suspicion of internal misconduct.'" 778 F.3d at 95. Oak Hill argues that such a "shift" occurred no later than February 16, 2007, the date on which Duane Reade's Board of Directors retained Cooley to initiate Internal Investigation-2, which began after Paul Weiss uncovered evidence of additional wrongdoing by Cuti related to a real estate income transaction. While the Government agrees that costs incurred between February and May 2007 appear to have been incurred to further both the arbitration and the Internal Investigations, it is reasonable to use May 2007,

"necessary." Accordingly, the Government submits that $430,852.22, the costs incurred with the use and maintenance of the Kroll Database *after* the commencement of (and for the purpose of) the criminal case, are properly included in the restitution award.

### *AlixPartners*

Oak Hill also seeks $211,852.49 in restitution for monies paid to AlixPartners, the forensic accounting firm retained by Cooley to assist with the Internal Investigations. Because the core of Cuti's fraudulent schemes was highly complex accounting frauds, the "assistance of AlixPartners was necessary to unravel those schemes." (May 21 Decl. at ¶ 22.) Cuti concedes as much, stating that because Alix Partners' work for Cooley was "essentially an extension of the law firms that retained it, AlixPartners' fees should generally be eligible for restitution to the same extent as those law firms." (August 7 Reply ¶ 49, quoting Cuti MOL.)[4] Moreover, since the May 8 Letter, Oak Hill obtained detailed descriptions specifying the tasks performed by AlixPartners. (May 21 Decl. at ¶ 23; Exhibit E.) Based on a review of these detailed records, Oak Hill identified $130,437.13 in expenses not clearly necessary and removed those costs from its demand. Finally, Cuti asserts that fees imposed by AlixPartners for compiling the relevant bills should be excluded. (Cuti MOL at 16, n.9). Because Oak Hill has not shown why fees for billing meet the necessity requirement, $2,417.58—the amount of fees and related disbursements allocated to billing—should be excluded from the restitution award, resulting in fees of $209,434.91 properly included in the restitution award.

### *KPMG and PwC*

Finally, Oak Hill seeks $493,000 in restitution for the monies paid to KPMG & PwC, auditors retained by Duane Reade to investigate and issue a restatement of Duane Reade's financial statements. The May 21 Declaration sets forth the relevant facts establishing the necessity of these expenses. (May 21 Decl. at ¶ 8.) Specifically, because the years during which the misconduct occurred overlapped with the tenures as Duane Reade's auditors of PwC, from 2000 to 2004, and KPMG, from 2005 onward, "each firm was responsible for giving attention to the internal investigation to determine whether Duane Reade was required to restate its financial statements for the years in which PwC and KPMG, respectively, had issued audit reports." (Id.) Oak Hill re-reviewed the KPMG and PwC reports previously submitted in support of this category of restitution, including testimony from Cuti's trial, and confirmed that all of the charges "relate to work they performed in following Duane Reade's internal investigations and in conducting the restatement of Duane Reade's financial statements." (Id. at ¶¶ 9-10.) For example, PwC's final invoice dated October 10, 2007 makes plain that its work included the restatement of Duane Reade's financial statements: "Final bill for professional services rendered in connection with the independent counsel investigation and resulting restatement of the Company's financial statements for the fiscal years ended December 2004 and prior." (Id. at ¶ 10.)

Oak Hill properly relies on *United States* v. *Cummings*, 189 F. Supp.2d 67 (S.D.N.Y. 2002) to establish that the work performed by KPMG and PwC was "necessary" as a matter of law. In

---

the date when the Government's criminal investigation began—and the arbitration was stayed—as the demarcation line for purposes of the costs associated with the Kroll Database.

[4] Paul Weiss previously reviewed the AlixPartners expenses and withdrew those alleged by Cuti to be work for the Arbitration. (August 7 Reply ¶ 52.)

*Cummings*, the Honorable Denise L. Cote held that a corporation is entitled to recover expenses incurred from the preparation of restatements of corporate financials where the original statements were inaccurate due to the corporation's chief financial officer's accounting fraud.  As Oak Hill points out, the Government's Sentencing Memorandum expressly advocated restitution "for the legal and accounting costs described in the Victim Impact Statement," including, *inter alia*, the PwC and KPMG restatement expenses.  (Government's Sentencing Memorandum, filed November 1, 2010 at 25-28.)  In particular, the Government argued that restatement expenses are properly included in a restitution award where, as here, "they were the proximate and direct result of the defendant's criminal conduct."  (*Id.* at 27 (citing *Cummings*, 189 F. Supp.2d at 75-78).)  Accordingly, for the same reasons argued at sentencing, the fees paid to KPMG and PwC are properly included in the restitution award.

## Conclusion

Because Oak Hill submitted additional evidence establishing the necessity of the Additional Expenses, these expenses may properly be included in the restitution order as follows:

- $1,585,125 for Duane Reade's employees' legal fees;
- $3,682,067.60 for work performed by Paul Weiss and Cooley;
- $430,852.22 for costs incurred with the use and maintenance of the Kroll Database for the purpose of the criminal case;
- $493,000 for the monies paid to auditors KPMG & PwC to issue a restatement of Duane Reade's financial statements following the discovery of Cuti's fraud; and
- $209,434.91 for AlixPartners for forensic accounting work to assist Cooley in the Internal Investigations.

Respectfully submitted,

PREET BHARARA
United States Attorney

By: _____/s_____
    Andrea M. Griswold
    Assistant United States Attorney
    (212) 637-1205

cc: All Counsel (via e-mail)