UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------X
UNITED STATES OF AMERICA,

                                        08 Cr. 972 (DAB)
        v.                              OPINION

ANTHONY CUTI,

                    Defendant.
--------------------------------------X
DEBORAH A. BATTS, United States District Judge.

        This matter is before the Court for reconsideration of the

Court's May 13, 2013 Order imposing restitution. (ECF No. 234

("2013 Order").) Defendant Anthony Cuti ("Defendant" or "Cuti")

was convicted by a jury on June 8, 2010 of conspiracy to make

false statements and securities fraud and sentenced, inter alia,

to thirty-six months of imprisonment. The Court ordered Cuti to

pay a total of $7,615,217.90 in restitution to Duane Reade, Inc.

("Duane Reade") and Oak Hill.[1] (See 2013 Order.) On February 6,

2015, the Court of Appeals for the Second Circuit affirmed in

part and vacated and remanded in part. United States v. Cuti,

778 F.3d 83 (2d Cir. 2015).

        For the reasons that follow, the Court reimposes a total of

$6,253,547.52 in restitution.

---

[1] All references to "Oak Hill" in this Order denote Oak Hill
Capital Partners, L.P., Oak Hill Capital Management Partners,
L.P., and OHCP DR Co-Investors, LLC.

## I. BACKGROUND

The Court presumes familiarity with the underlying facts of this matter as set forth in its prior Orders and will address only those that are relevant here. (See 2013 Order.)

### A. Procedural History

On October 14, 2011, the Court ordered Cuti to pay a total of $2,927,420.76 in restitution, comprised of: $1,855,106.87 for the fees and expenses of independent counsel Cooley Godward Kronish LLP ("Cooley") and forensic accountants AlixPartners; $493,000 for the fees and expenses of Duane Reade's auditors, KPMG and PricewaterhouseCoopers ("PwC"); and $579,313.89 for costs associated with the Kroll Ontrack database.[2] (ECF No. 200.) It referred two other categories of expenses potentially subject to restitution to the Honorable Henry B. Pitman for an inquest: the attorneys' fees and expenses for counsel provided to current and former Duane Reade employees; and the attorneys' fees and expenses of Paul, Weiss, Rifkind, Wharton & Garrison LLP ("Paul, Weiss"). (Id.)

Reviewing Magistrate Judge Pitman's December 21, 2012 Report and Recommendation de novo, the Court held that

---

[2] On July 29, 2011, the Court declined to award restitution in view of "complex issues of fact . . . that would unduly complicate and prolong the sentencing process." (ECF No. 162 (citing 18 U.S.C. § 3663(a)(1)(B)(ii)).) The Court reconsidered its denial on August 19, 2011. (ECF No. 181.)

$3,102,672.14 of the fees and expenses paid to Paul, Weiss and
$1,585,125 of the fees and expenses paid to counsel for current
and former Duane Reade employees were also subject to
restitution. (ECF No. 216 (Report and Recommendation); see 2013
Order.) Cuti's appeal followed.


   B. Second Circuit Vacatur

     On February 6, 2015, the Second Circuit affirmed in part
and vacated and remanded in part. Cuti, 778 F.3d 83. It rejected
Cuti's vindictiveness argument, and explicitly affirmed the
Court's restitution award to Duane Reade for the cost of counsel
it provided to its employees in connection with the Government's
investigation. Id. at 91-93. It also affirmed the Court's
provision of restitution to Oak Hill as a non-victim insofar as
Oak Hill paid for compensable expenses incurred by Duane Reade.
Id. at 92.

     As the Court will discuss in greater detail below, the
Second Circuit vacated and remanded the case for two limited
purposes: first, to "exclude any payments made by Oak Hill to
Paul, Weiss that reflected legal work performed solely on Oak
Hill's behalf, whether incurred before, during or after trial";
and second, to consider, in light of Cuti and pursuant to the
standards set forth in United States v. Maynard, 743 F.3d 374
(2d Cir. 2014), "whether the government has proved by a

                               3

preponderance of evidence that some, or any, of Paul, Weiss's and Cooley's expenses were 'necessary to the investigation or prosecution' of Cuti's criminal case." <u>Cuti</u>, 778 F.3d at 92, 95.


## II. DISCUSSION

A. Applicable Legal Standards

The Victim and Witness Protection Act ("VWPA") authorizes courts to order criminal defendants to compensate the victims of their criminal offenses.[3] <u>See</u> 18 U.S.C. §§ 3663, 3664. "[R]estitution is authorized only for losses that were directly caused by the conduct composing the offense of conviction, . . . and only for the victim's actual loss." <u>United States v. Marino</u>, 654 F.3d 310, 319-20 (2d Cir. 2011) (quotation marks and alterations omitted). The District Court's task is to make a "reasonable estimate" of the actual loss "based on the evidence before it." <u>United States v. Milstein</u>, 481 F.3d 132, 137 (2d Cir. 2007). Among the actual losses subject to restitution are "necessary . . . other expenses related to participation in the investigation or prosecution of the offense or attendance at proceedings related to the offense." 18 U.S.C. § 3663(b)(4). Such expenses may include attorneys' fees and accounting costs.

---

[3] The Court previously determined that restitution is not available under the Mandatory Victims Restitution Act ("MVRA"), 18 U.S.C. § 3663A, for the offenses Cuti was convicted of. (2013 Order 6-8.) That conclusion was not disturbed on appeal.

Maynard, 743 F.3d at 381. The Government bears the burden of demonstrating, by a preponderance of the evidence, the amount of a victim's loss. 18 U.S.C. § 3664(e).

  B. Payments by Oak Hill to Paul, Weiss

     The Court's first task on remand is to exclude from restitution "any payments made by Oak Hill to Paul, Weiss that reflected legal work performed solely on Oak Hill's behalf, whether incurred before, during or after trial." Cuti, 778 F.3d at 92. As noted above, the Second Circuit found "no abuse of discretion in the court's decision to award Oak Hill restitution under § 3664(j)(1) on the theory that Oak Hill paid expenses on Duane Reade's behalf,"[4] and concluded that the Court

---

[4] Cuti attempts to relitigate the issue of Oak Hill's entitlement to restitution as a non-victim, arguing that Oak Hill was not "required to make payments to Duane Reade" and instead did so in order to advance its own interests related to the arbitration. (Cuti Opp'n 35-38.) Cuti's argument lacks merit. Oak Hill's entitlement to restitution does not rest on an obligation to make payments on behalf of Duane Reade. (2013 Order 12-13 (citing 18 U.S.C. § 3664(j)(1) ("If a victim has received compensation from insurance or any other source . . . the court shall order that restitution be paid to the person who provided or is obligated to provide the compensation . . . .").) Neither is it relevant or material why Oak Hill assumed the burden of paying for a portion of Duane Reade's "necessary" legal fees, provided those fees were incurred by Duane Reade. Indeed, the Court has already held that Oak Hill is entitled to restitution as a non-victim pursuant to 18 U.S.C. § 3664(j)(1) because "Duane Reade received compensation from Oak Hill for a portion of the necessary legal and accounting costs related to Duane Reade's participation in the criminal investigation and prosecution of Mr. Cuti," despite the fact that Oak Hill

appropriately excluded from its Award certain payments by Oak

Hill to Paul, Weiss for trial and post-trial work on its own

behalf. Id. It nevertheless remanded because "the record

suggests that some of Paul, Weiss's pre-trial work may have been

performed on behalf of Oak Hill." Id.

Following a review of the Paul, Weiss invoices paid by Oak

Hill, Oak Hill and Duane Reade submit that Oak Hill paid

$1,138,284.49 in compensable expenses on behalf of Duane Reade.[5]

(See Beller Decl. ¶¶ 8-12.) The expenses that have been

withdrawn relate to document production requested by the

Government from Oak Hill and communications between Paul, Weiss

and Oak Hill. (Id. ¶ 9.)

Arguing that "[t]he potential for awarding unauthorized

restitution [to Oak Hill] is manifest," Cuti highlights several

Paul, Weiss time entries that appear to mix time spent on Duane

Reade's behalf with time spent on Oak Hill's behalf. (Cuti Opp'n

---

compensated Duane Reade by making payments directly to Paul,
Weiss and AlixPartners. (2013 Order 13-14.) The Second Circuit
has affirmed that conclusion, and the Court accordingly need not
revisit it here.

[5] $262,857.39 has been withdrawn relative to the 2013 Award,
which awarded a total $1,401,141.86 for payments made by Oak
Hill on Duane Reade's behalf. (2013 Order 15.) The withdrawn
charges include $250,052.93 stemming from the initial review of
Paul, Weiss invoices paid by Oak Hill, Beller Decl. ¶ 12, and
$12,804.46 in connection with a document production on behalf of
Oak Hill on June 12, 2008 to which Cuti objected. (Cuti Opp'n
37-38; Beller Reply Decl. ¶ 72.) Those amounts are also
reflected in the overall Paul, Weiss fees and expenses subject
to restitution. See infra Part II.C.2.

35-41.) Cuti reasons that, because the allegedly specious entries fall on the same day or in the days immediately after work that Paul, Weiss performed for Oak Hill (and is therefore not subject to restitution), it is "reasonable to infer" that those entries "reflect work done solely for Oak Hill." (Id. 39-41.)

The Court does not agree. There is no reason to infer from the careful exclusion of certain Oak Hill items in the subject entries that other work on behalf of Oak Hill was inexplicably included in the restitution request. Nor would it be anomalous (or even unlikely) for counsel to work on two different matters, on behalf of two different clients, on the same day. Moreover, the entries called into question by Cuti concerning "loss" relate to work that was undertaken by Paul, Weiss to respond to questions from the Government about Cuti's compensation while at Duane Reade and the company's valuation and stock price during Cuti's fraud. (Id. 41; Beller Reply Decl. ¶ 73.)

Having reviewed the time records pertaining to payments by Oak Hill on behalf of Duane Reade, the Court is satisfied by a preponderance of the evidence that $1,138,284.49 billed by Paul, Weiss was for work for Duane Reade and is therefore appropriately part of the restitution ordered.

C. Paul, Weiss and Cooley Fees and Expenses

The next issue to be considered on remand concerns work performed on Duane Reade's behalf by Paul, Weiss and Cooley and the scope of the VWPA provision that permits restitution for "necessary . . . other expenses related to participation in the investigation or prosecution" of Cuti's offenses. See 18 U.S.C. § 3663(b)(4). In Maynard, decided while Cuti's appeal of this Court's restitution decision was pending, the Second Circuit elaborated on the meaning of "necessary" expenses in a parallel provision of the MVRA. 743 F.3d 374. It held that, for an expense to be "necessary," it must be an expense "the victim was required to incur to advance the investigation or prosecution of the offense." Id. at 381.

In Cuti, the Second Circuit for the first time applied Maynard's holding regarding "necessary" expenses to the VWPA. It noted that Courts in the Second Circuit take a "broad view of what expenses are necessary in the restitution context." Cuti, 778 F.3d at 93 (citing Maynard, 743 F.3d at 381). The Court observed that two of its previous cases involved "internal investigations paid for by the victims [that] unmasked fraud and led to investigations conducted by the authorities" and explained the reasoning behind its conclusion that those expenses were "necessary":

> The expense of the internal investigations was
> necessary because the entity had interests to protect
> (the integrity of its ongoing operations and
> reputation, at the least) as well as a duty to protect
> those interests when faced with evidence, indicia, or
> a grounded suspicion of internal misconduct, and the
> investigation was a means calculated to achieve the
> protection of those interests.

Id. at 93-94 (emphasis omitted) (citing Maynard, 743 F.3d at
381).

In extending Maynard, the Second Circuit highlighted two
distinctions between the circumstances here and those it
addressed previously. First, it noted that the initial inquiry
into Cuti's conduct was "motivated by Duane Reade's need to
defend itself in Cuti's arbitration proceeding." Id. at 94.
"[W]here the record shows that a particular investigation was
commenced, and its corresponding expenses incurred for another
reason (here the defense of an impending arbitration by a
disgruntled former executive) then that particular investigation
cannot be 'a means calculated to achieve the protection' of a
corporation's 'ongoing operations and reputation.'" Id. (quoting
Maynard, 743 F.3d at 381).

The Second Circuit also highlighted the added complexity
that accompanies Duane Reade's decision to retain two separate
law firms. "To conclude that both firms' expenses for
investigating the same two underlying frauds were 'necessary' to

the government's case would vitiate any limit on our already
broad view of 'necessary' expenses." Id. at 95. It clarified:

> On remand, the question for the district court is
> whether the government has proved by a preponderance of
> evidence that some, or any, of Paul, Weiss's and
> Cooley's expenses were "necessary to the investigation
> or prosecution" of Cuti's criminal case. The court
> should consider at least whether the claimed
> expenditures by Paul, Weiss were redundant or
> duplicative of the expenses incurred for Cooley's
> investigatory work – including whether one firm's work
> served merely as a second opinion or to corroborate the
> other's findings – as well as whether the fact that two
> independent firms were at times working in tandem
> created additional, needless administrative costs.

Id. at 95-96 (citations omitted). However, "[a]t a minimum,
Paul, Weiss's expenses from meetings with the government,
turning over its findings, and cooperating with the government's
own investigation are recoverable under our precedent as
necessary expenses under Section 3663(b)(4)." Id. at 96.


### 1. Prior to the Government's Investigation

#### a.    Paul, Weiss and Cooley Fees

In light of the Second Circuit Opinion, Duane Reade has
reduced substantially the Paul, Weiss fees and expenses incurred
prior to the Government's investigation for which it seeks
restitution. For work performed by Paul, Weiss between the
firm's first billing on October 5, 2006 and May 22, 2007 – the
date on which the Government served a grand jury subpoena on
Duane Reade and first met with Paul, Weiss regarding its

investigation – Duane Reade now seeks a total of $141,442.10.
(Beller Decl. ¶ 25.) Of that sum, $9,459.80 was incurred prior
to October 30, 2006 as Paul, Weiss assisted Duane Reade in
looking into a letter (the "Steudtner Letter") from Udo
Steudtner, a former Duane Reade Director of Construction,
alleging financial irregularities; $82,427.20 was incurred
between February 5 and February 22, 2007 as Paul, Weiss examined
the Blue Trophy transaction; and $49,555.10 was attributable to
Paul, Weiss's first meeting with the Government on May 22, 2007.
(Id. ¶¶ 15-25.)

The Record leaves little doubt that, in the months leading
up to its first meeting with the Government on May 22, 2007,
Paul, Weiss was focused on the ongoing arbitration proceedings
between Cuti and Duane Reade. At least as to its inquiry into
the Blue Trophy transaction, Paul, Weiss acknowledges as much.
(See Beller Reply Decl. ¶ 18.)

Cuti is therefore correct that Paul, Weiss's fees prior to
its first meeting with the Government – $9,459.80 and
$82,427.20, respectively, for preliminary investigations into
the credit and rebilling scheme and the Blue Trophy transaction
– were not "necessary" under Maynard and Cuti. To be sure,
Cuti's fraud may have gone undetected had the arbitration not
provided the impetus for Paul, Weiss to unearth "dirt" on Cuti.
However, it is not necessity in the "but for" sense that must be

11

present to make such expenses compensable in restitution. See
Cuti, 778 F.3d at 95 ("[I]t is not enough that the expenses
incurred helped the investigation." (internal quotation marks
omitted)). Rather, as the Second Circuit explained, necessity in
this context denotes expenses that the victim was "required to
incur" either as a result of the offense itself or in the course
of the resulting Government investigation and prosecution. See
id. at 93-94.

It is not clear on the Record before the Court that Paul,
Weiss, in the period prior to the Government's investigation and
a stay being entered in arbitration proceedings involving Cuti
and Duane Reade, ever "shift[ed] its focus" from the arbitration
proceedings to an internal investigation into allegations of
fraud against Cuti. See id. at 95. To the contrary, the Record
suggests that Paul, Weiss was propelled by the need to defend
Duane Reade in its pending arbitration, and would have
investigated the allegations against Cuti with equal verve even
absent concerns about the integrity of Duane Reade's ongoing
operations. In other words, Paul, Weiss's efforts were at best
directed at both the arbitration and at rectifying any harm done
to the company by Cuti's misdeeds. On the Court's reading of
Maynard and Cuti, that is not sufficient to support a finding
that such expenses were "necessary."

However, the Paul, Weiss fees and expenses that Duane Reade incurred in preparing for and attending the May 22, 2007 meeting with the Government ($49,555.10) are plainly subject to restitution. (See Beller Decl. ¶¶ 23-24.) As noted above, the Second Circuit held explicitly that meeting with the Government is a "necessary" and compensable expense.[6] Cuti, 778 F.3d at 96. The Court is satisfied, after reviewing the relevant evidence, that Paul, Weiss's fees and expenses in connection with the May 22, 2007 meeting were necessary pursuant to 18 U.S.C. § 3663(b)(4). (See Beller Decl. ¶¶ 23-25.)

It is likewise clear that the cost of Cooley's independent investigations into the credit and rebilling and real estate concession schemes falls squarely within the Second Circuit's definition of "necessary" expenses.[7] Duane Reade seeks a total of

---

[6] Cuti objects to "nearly $50,000 in supposed preparatory activity" while acknowledging that the "meetings themselves" are subject to restitution. (Cuti Opp'n 6 n.2.) Cuti's argument scarcely merits a response: It would make little sense to permit restitution for time Paul, Weiss spent "meeting[] with the government[ and] turning over its findings," 778 F.3d at 96, but not the time it spent preparing to do so. In any event, Cuti has not explained his objection or directed the Court to the "preparatory activity" he deems unnecessary.

[7] Cuti objects to restitution for the expenses incurred during the first Cooley investigation related to "Project 9," which involved misconduct concerning maintenance expenses and was not ultimately connected to Cuti. (Cuti Opp'n 20-21.) However, Cooley's inquiry into Project 9 grew out of allegations in the Steudtner Letter, and was thus clearly within the scope of its overall investigation. (Beller Reply Decl. ¶ 54.) Although that aspect of the investigation found no direct link to Cuti, the

13

$1,224,542.57 in fees and expenses for this period attributable to the internal investigations performed by Cooley.[8] (Id. ¶¶ 32-35.)

Cuti takes the untenable position that neither Paul, Weiss's fees nor Cooley's fees related to those firms' respective investigations are compensable in restitution. As discussed above, the Court agrees with Cuti that Paul, Weiss's efforts (prior to the Government's investigation) were directed first and foremost at representing Duane Reade in its arbitration against Cuti. As to Cooley, Cuti reasons that its work "merely duplicated and confirmed Paul, Weiss's original conclusions," which had already uncovered "more than just some evidence or 'a grounded suspicion'" of fraud. (Cuti Opp'n 6-11.)

Cuti's argument is not supported by the record. As a general matter, there is ample evidence in the record that the Audit Committee of the Board of Directors of Duane Reade (the "Audit Committee") twice retained Cooley in the face of serious and complex allegations of fraud. Paul, Weiss's initial

---

Court is aware of no authority (and Cuti cites none) finding that restitution must be limited to only those facets of a "necessary" investigation that shed light on the criminal conduct for which restitution is at issue.

[8] Duane Reade has removed from its restitution request $3,646.45 in fees that are "arguably . . . redundant or duplicative" in light of the Second Circuit Order. (Beller Decl. ¶¶ 33-34.) It has also removed, in response to Cuti's objections, $6,572.14 in Cooley fees related to interviews concerning "vendor rebates." (Cuti Opp'n 21; see Beller Reply Decl. ¶ 58 n.22.)

inquiries into those allegations were very limited in scope.
Paul, Weiss spoke to Duane Reade's General Counsel, Michelle
Bergman, on several occasions about the allegations of fraud
contained in the Steudtner Letter, but its role was largely
limited to encouraging her "to do an analysis that she had
failed on her own to undertake." (Beller Reply Decl. ¶ 9; see
also id. ¶¶ 9-13.) Bergman's review suggested that the
allegations in the letter were accurate, and Bergman and Paul,
Weiss reported that to the Audit Committee a few days later.
(Id. ¶ 12.) After learning of the Blue Trophy transaction
several months later from Duane Reade's former General Counsel,
Paul, Weiss "gathered and reviewed documents relating to the
transaction [and] spoke with a few Duane Reade employees and
others who had knowledge of the transaction" before concluding
that it was most likely fraudulent and relaying its conclusion
to the Audit Committee. (Id. ¶ 19.) It is therefore not credible
for Cuti to assert that Paul, Weiss presented the Audit
Committee "more than just some evidence or 'a grounded
suspicion'" of fraud.[9]

---

[9] The Second Circuit cautioned that, "[t]o the extent that Paul,
Weiss's initial work on the real estate concession scheme, prior
to turning over its information to Cooley, was the work that
'unmasked [the] fraud,' Cooley's work was probably not
necessary." Cuti, 778 F.3d at 95. Paul, Weiss's inquiry into the
Blue Trophy transaction was admittedly more extensive than the
cursory time it spent on the credit and rebilling scheme.
However, the Court nonetheless concludes that Paul, Weiss

Cooley's investigations, by contrast, were comprehensive and thorough. During its investigation into the credit and rebilling scheme, Cooley reviewed internal Duane Reade documents, accounting data and email communications and conducted numerous interviews with Duane Reade officers and employees as well as vendors who performed work for the company. (Brook Decl. Ex. 2 (Cooley Report to the Audit Committee of the Board of Directors of Duane Reade dated December 13, 2006) 1-3.) The credit and rebilling investigation uncovered a "pattern of activity" from 2000 to 2005. (Id. 4.) Cooley's investigation into the real estate concessions scheme likewise involved analyzing documentary evidence and conducting interviews with witnesses from Duane Reade as well as outside parties. (Brook Decl. Ex. 3 (Cooley Report to the Audit Committee of the Board of Directors of Duane Reade dated May 18, 2007) 1-2.) The scope of Cooley's real estate concessions investigation included any "items classified as real estate concession income during the period 2000-2006," and it ultimately unearthed thirteen separate

---

provided the Audit Committee with only "some evidence" of fraud because its work concerned only a single transaction among many that would be uncovered by Cooley's investigation and would together comprise the real estate concessions scheme for which Cuti was prosecuted and convicted. (See Beller Reply Decl. ¶ 29 ("Paul, Weiss's work disclosed that the Blue Trophy transaction was improperly accounted for and was more than likely fraudulent. But Paul, Weiss 'investigated' only one transaction and payment.").)

fraudulent agreements related to real estate concession income.
(Id. 1, 3.)

The Court accordingly concludes that the Audit Committee's
decisions to retain Cooley were "necessary" steps to "protect .
. . the integrity of [Duane Reade's] ongoing operations and
reputation." See Maynard, 743 F.3d at 381. Moreover, Cooley's
investigations were also "necessary" because they "unmasked" the
full extent of Cuti's fraud and therefore "led to" the
Government's investigation and prosecution to a far greater
extent than the cursory, arbitration-focused inquiries conducted
by Paul, Weiss. See id.

Cuti attempts to show that Cooley's investigations were
duplicative in a variety of ways. He first argues that Cooley's
investigation into the credit and rebilling scheme cannot have
been necessary because Paul, Weiss filed arbitration
counterclaims on behalf of Duane Reade describing $5,811,897.62
in fraudulent credits almost a month before Cooley completed its
investigation and reported the same figure. (Cuti Opp'n 6-7.)
However, Cooley had provided Paul, Weiss with its "preliminary"
findings in the credit and rebilling investigation by the time
Paul, Weiss filed its arbitration counterclaims, negating any
inference that Cooley was duplicating work Paul, Weiss had
already done or that its investigation was merely a "second
opinion." (See Beller Reply Decl. ¶ 15.)

Next, noting that Paul, Weiss filed counterclaims related to the Blue Trophy transaction on April 9, 2007 and "did not simply sit back and let [Cooley] perform its investigation" into the real estate concessions scheme, Cuti argues that, "[i]f everything was going to be done for the Arbitration anyway, then Cooley's parallel investigation was unnecessarily duplicative." (Cuti Opp'n 7-8 (emphasis omitted).) Cuti's conclusion that Cooley's work was duplicative does not follow from its premises and is not supported by the Record. Paul, Weiss had sufficient knowledge of the Blue Trophy transaction to make arbitration counterclaims on Duane Reade's behalf without relying on the results of Cooley's investigation. Moreover, the timing of Duane Reade's decision to assert its counterclaims, based solely on its knowledge of the Blue Trophy transaction, has no bearing on the necessity of Cooley's comprehensive investigation.

Cuti's argument that Paul, Weiss's "active (and possibly leading) role" in the real estate concessions scheme investigation suggests that Cooley's investigation was merely a "second opinion" likewise fails. (Id. 7-11.) That Paul, Weiss attorneys attended witness interviews during Cooley's investigation is not evidence that Paul, Weiss "conducted" those interviews or took an "active" role in Cooley's investigation.[10]

---

[10] Duane Reade is not seeking restitution for Paul, Weiss's fees related to attending Cooley interviews.

(See Beller Reply Decl. ¶¶ 30-31 (Paul, Weiss attorneys "attended a number of interviews conducted by Cooley" to "observe and provide assistance as necessary").) Nor is there any reason to consider Cooley's investigation "duplicative" simply because Paul, Weiss attorneys chose to attend several such interviews in their capacity as Duane Reade's arbitration counsel. As the Second Circuit noted, Duane Reade was free to spend as much as it saw fit on its own arbitration defense, including paying for its lawyers to attend Cooley's investigative interviews. Cuti, 778 F.3d at 95.

Having reviewed the time records pertaining to Cooley's investigations, the Court finds by a preponderance of the evidence that Duane Reade is entitled to restitution for the fees and expenses ($1,224,542.57) it incurred in connection with those investigations.

b.    Third-Party Expenses

The Parties take divergent positions regarding the status on remand of restitution for the cost of the Kroll Ontrack database, the forensic accounting firm AlixPartners, and Duane Reade's auditors, KPMG and PwC. (Compare ECF No. 250 (Gov't Ltr. dated May 8, 2015) at 4 ("It remains unresolved whether payments to AlixPartners, Duane Reade's auditors (KPMG and PwC), and for the Kroll Ontrack database were 'necessary.'") and Cuti Opp'n

11-16 (same) <u>with</u> Beller Supp. Decl. ¶¶ 2-6 (arguing that those costs are not among the issues before the Court on remand).) The Second Circuit, for its part, did not directly address those costs other than to note that the Court included them in its 2013 Order. <u>See generally</u> <u>Cuti</u>, 778 F.3d 83. However, given the broad scope of the Second Circuit's instructions on remand and the clarification in applicable law in <u>Cuti</u> and <u>Maynard</u>, the Court finds it prudent to briefly reexamine those facets of its restitution award.

The fees of auditors KPMG and PwC ($493,000) in connection with preparing and filing Duane Reade's amended financial statements are subject to restitution.[11] (<u>See</u> Beller Supp. Decl. ¶¶ 7-10 & Ex. A.) The financial burden of restating public financial statements is exactly the sort of "necessary" expense for which restitution is proper. <u>United States v. Cummings</u>, 189 F. Supp. 2d 67, 75-76 (S.D.N.Y. 2002) (ordering restitution to company "forced to issue restated financials" by a partner's financial manipulations and false statements). The Court has reviewed the time records pertaining to KPMG and PwC and is satisfied by a preponderance of the evidence that Duane Reade is entitled to restitution for those costs.

---

[11] Relying on an Order issued by the Court more than two years before the 2013 Order, Cuti makes the feeble argument that Duane Reade "waived" restitution of the auditor expenses. (Cuti Opp'n 15 (citing ECF No. 124).) Cuti's argument is implausible and incorrect.

The fees for AlixPartners's forensic accounting services ($208,157.32[12]) are also subject to restitution. Cooley retained AlixPartners in connection with both of its investigations, and AlixPartners also assisted auditors KPMG and PwC and (to a limited extent) responded to requests for information from the Government. (Beller Supp. Decl. ¶¶ 22, 24.) AlixPartners was accordingly retained in connection with expenses the Court has already determined were "necessary"[13] and therefore eligible for restitution.[14] See, e.g., United States v. Amato, 540 F.3d 153, 160-63 (2d Cir. 2008). The Court has reviewed AlixPartners's time records and is satisfied by a preponderance of the evidence that $208,157.32 is appropriate for restitution.

---

[12] The Court previously included restitution totaling $342,289.62 for the cost of retaining AlixPartners. (2013 Order 2-3.) After a review of AlixPartners's time entries, Duane Reade has reduced its request to $208,157.32. (Beller Supp. Decl. ¶¶ 25-27; see also Beller Reply Decl. ¶ 58 n.22 (reducing its request by an additional $3,695.17).) It is not clear from Duane Reade's submissions whether Oak Hill made any payments to AlixPartners for expenses included in Duane Reade's revised proposed restitution award. (See Beller Supp. Decl. ¶¶ 21-26 & Exs. D-E.) Restitution for AlixPartners's fees and expenses should accordingly be paid to Duane Reade.

[13] Cuti concedes that AlixPartners's fees are "eligible for restitution" to the extent that it was retained in connection with a compensable task. (Cuti Opp'n 16.)

[14] Cuti objects to charges for "[b]illing" contained in the AlixPartners records. (Cuti Opp'n 16 n.20.) The charges are very small in relation to AlixPartners's costs overall, and the Court therefore finds them to be reasonable.

However, Duane Reade falls short of demonstrating that the cost of creating the Kroll Ontrack database was "necessary" to the Government's investigation under the standards set forth by the Second Circuit in Maynard and Cuti. The database was "initially established . . . for the purpose of conducting discovery in the Cuti arbitration proceedings," and contained documents from the computer hard drives of Cuti and other Duane Reade executives. (Beller Supp. Decl. ¶ 14.) Duane Reade argues that it is entitled to restitution for the full cost of the database because, "[h]ad the database not already existed when the Government investigation began, we would have needed to create it," and that it therefore "resulted in a huge net cost savings." (Id. ¶ 18.) That argument fails because, as the Second Circuit made clear, "it is not enough that the expenses incurred helped the investigation." Cuti, 778 F.3d at 95 (internal quotation marks omitted). The creation of the Kroll database was undisputedly not an expense that Duane Reade was "required to incur" to advance the Government's investigation (which did not yet exist) or to protect its ongoing operations, and its full cost accordingly cannot be subject to restitution under the standards set forth by the Second Circuit in Maynard and Cuti.

As an alternative, Duane Reade proposes that the Court award restitution for half of the cost of creating and maintaining the database from its inception in late 2006 through

the initiation of the Government's investigation in May 2007.
(Beller Supp. Decl. ¶ 20.) During that period, the database was
used for the arbitration as well as to provide documents to
Cooley for use in the real estate concessions investigation.
(Id. ¶ 16.) However, Duane Reade has not provided the Court with
any basis for a 50/50 split of the Kroll-related expenses, and a
review of the invoices provides little clarity. The Court
therefore declines to award restitution for the costs of the
Kroll Ontrack database ($148,461.67) prior to May 2007.

However, the Record is clear that, after the Government's
investigation was commenced, the full cost of the database was a
"necessary" expense. Shortly after the Government initiated its
investigation on May 22, 2007, it sought a stay of the Cuti
arbitration proceedings.[15] (Id. ¶ 17.) From that request forward,
the "sole purpose" of the database was to provide assistance to
the Government. (Id.) Indeed, Duane Reade had little incentive
to continue paying to maintain the Kroll Ontrack database aside
from its usefulness in responding to the Government's demands
for information and assistance. The costs for the Kroll Ontrack
database that Duane Reade incurred after May 2007 ($430,852.22)
are therefore subject to restitution. (See id. ¶ 20 & Ex. C.)

---

[15] Although the arbitration was not formally stayed until July
11, 2007, the arbitrator suspended discovery as of May 29, 2007
pending her decision regarding a stay. (Beller Reply Decl. ¶ 40
n.15.)

    2. During the Government's Investigation

    The Court's final task is to fashion an appropriate

restitution award for the fees and expenses Duane Reade incurred

during the Government's investigation and prosecution. Duane

Reade is seeking $2,012,595.55 for worked performed by Paul,

Weiss and $274,719.76 for work performed by Cooley.[16] (Beller

Decl. ¶¶ 26-30, 36-39.)

    Cuti's primary objection to this portion of the proposed

restitution award relates to the standard of proof the Court

should apply.[17] (See Cuti Opp'n 16-19.) Cuti argues that, "to the

extent that the record does not clearly show that claimed

_____

[16] Duane Reade has reduced its request for restitution of the
fees and expenses of Paul, Weiss and Cooley during this period
by $14,052.49 and $3,337.29, respectively, to account for
"arguably . . . redundant or duplicative" entries. (Beller Decl.
¶¶ 28-30, 37-38.) Its request has been reduced by an additional
$250,052.93 to account for work Paul, Weiss "arguably" performed
on behalf of Oak Hill rather than Duane Reade. (Id. ¶ 12; see
supra Part II.B & note 5.) Finally, in response to Cuti's
objections, see infra note 20, Duane Reade has withdrawn
$22,196.44 from its Paul, Weiss fee request for this period.
(Beller Reply Decl. ¶ 62 ($3,018 in Paul, Weiss fees related to
maintaining a stay in the arbitration); id. ¶ 64 ($5,327.95 for
work related to the SEC action, which the Court attributes to
Paul, Weiss because it is unable to discern from Duane Reade's
explanation the precise breakdown between the firms); id. ¶ 65
($1,046.03 for legal research conducted by Paul, Weiss that was
erroneously included in the restitution request); id. ¶ 72
($12,804.46 in Paul, Weiss fees related to a June 12, 2008
document production).)

[17] Cuti's counsel "has not yet analyzed the entirety of the Paul
Weiss and Cooley billing records" because the cost of doing so
"could not reasonably be justified given that there are
apparently still fundamental disputes" about the interpretation
of the Second Circuit's decision. (Cuti Opp'n 19.)

expenditures satisfy the necessity requirement, that 'lack of clarity' precludes their inclusion in the restitution order." (Id. 17.) However, Cuti mistakes the Second Circuit's clarification of the nature and scope of "necessary" expenses for a change in the law governing loss calculation.[18] The Second Circuit did not address, much less alter, longstanding authority that it is sufficient for the District Court to make a "reasonable estimate" of the actual loss "based on the evidence before it." United States v. Milstein, 481 F.3d 132, 137 (2d Cir. 2007); see also United States v. Newsom, 399 F. App'x 625, 627 (2d Cir. 2010) (upholding Restitution Order because it was a "reasonable estimate of the actual loss to investors caused by the fraud"); United States v. Stathakis, 320 F. App'x 74, 78 (2d Cir. 2009) (noting, for purposes of restitution, that the "court

---

[18] It bears mention that the Second Circuit was concerned overwhelmingly, if not exclusively, with the potential for duplicative expenses during the period in which Cooley was conducting its investigations and Paul Weiss was focused on the arbitration proceedings. Cuti, 778 F.3d at 95 (holding that "both firms' expenses for investigating the same two underlying frauds" could not be "necessary" expenses subject to restitution). The Second Circuit's focus on that period makes perfect sense, given the complexity of compensating Duane Reade for its losses in a manner consistent with Maynard while it was also engaged in a related and contentious arbitration. That rationale does not apply to the same extent in the period after Cooley's investigations had been completed and the arbitration had been stayed. Indeed, during the latter period the fees of Paul, Weiss and Cooley are more aptly considered as part of the category of expenses attributable to "meetings with the government . . . and cooperating with the government's own investigation" that the Second Circuit noted were recoverable "[a]t a minimum." Id. at 96.

need only make a reasonable estimate of the loss") (quotation

marks omitted); United States v. Nazareno, 65 F. App'x 354, 356

(2d Cir. 2003) (noting, for purposes of restitution, that "loss

need not be determined with precision, that the court need only

make a reasonable estimate of the loss, given the available

information, and that the estimate of loss may be based on

general factors") (quotation marks and alterations omitted);

United States v. Germosen, 139 F.3d 120, 129-30 (2d Cir. 1998)

(same) (quotation marks omitted).

Cuti also objects to several specific entries in the Paul,

Weiss time records[19]: fees for time counsel spent keeping abreast

of developments in the Government's case against Cuti; fees for

time counsel spent reading news reports and drafting a press

release and an audit letter; and expenses for meals and travel.

(Cuti Opp'n 22, 25-28, 34-35; Beller Reply Decl. ¶¶ 60, 63, 66,

69.) Finally, Cuti argues that the Court should not award

---

[19] Cuti makes several other objections that are now moot. Duane
Reade has withdrawn its restitution request for entries
identified by Cuti that relate to: seeking and later maintaining
a stay of the arbitration during the Government's investigation;
the SEC action against Cuti; legal research that was erroneously
included in the restitution request; and a document production
on behalf of Oak Hill on June 12, 2008. (Cuti Opp'n 24-27, 38-
39; Beller Reply Decl. ¶¶ 62, 64-65, 72.) On the other hand,
Cuti objects to the inclusion of fees related to Paul, Weiss's
alleged efforts to "avoid reviewing or producing documents" that
he requested; in fact, those entries (to the extent Cuti has
adequately identified those he objects to) reflect work done at
the Government's request. (Cuti Opp'n 21-22; see Beller Reply
Decl. ¶ 59.)

restitution for vague or block-billed time entries or for allegedly excessive amounts of time spent by Paul, Weiss and Cooley conferring with one another. (Cuti Opp'n 28-34.)

Cuti's proposed reductions would unduly restrict the fees and expenses that are "necessary" to participate in the Government's investigation. It is entirely reasonable for Duane Reade's counsel to spend a modest amount of time to track the status of criminal proceedings related to its former CEO and to disseminate information to its auditors and the public. The Court also fails to comprehend why it would be appropriate (under certain circumstances) to pass on counsel's transportation and meal costs to a client but not to treat such expenses as necessary under Maynard. And, contrary to Cuti's complaints regarding vague and block-billed time records, Duane Reade need not provide evidence of "the purpose of a particular phone call, meeting or email exchange" in order to be compensated for its losses. (Cuti Opp'n 28.) The Court has reviewed the records in question and finds that they are supported with sufficient detail to warrant an award of restitution.

However, while occasional errors are understandable, the burden of correcting counsel's erroneous document production must fall on Duane Reade. (See Cuti Opp'n 22; Brook Decl. Ex. 11 (Cooley Ltr. dated June 7, 2007); id. Ex. 12 (Paul, Weiss Ltr.

dated Sept. 14, 2009).) By the Court's estimate, the cost of
identifying and correcting the Cooley production errors was
approximately $15,000. (See Freedman Decl. Ex. 4 (Cooley Fees
Appendix) Tab 8 at 1-3 (entries dated June 5 to June 15, 2007
reflecting, inter alia, privilege review, reproduction and
letters communicating same).) The cost of identifying and
correcting the Paul, Weiss production errors was approximately
$10,000. (See id. Ex. 2 (Paul, Weiss Fees Appendix) Tab 38 at 7-
8 (entries dated September 11 to September 14, 2009 reflecting,
inter alia, drafting of a "clawback" letter, review of privilege
logs and reproduction).) The Court accordingly deducts those
amounts from the proposed restitution award and finds, by a
preponderance of the evidence, that Duane Reade is entitled to
$2,002,595.55 for worked performed by Paul, Weiss and
$259,719.76 for work performed by Cooley during this period.


### III. CONCLUSION

For the foregoing reasons, the Court orders Defendant
Anthony Cuti to pay a total of $6,253,547.52 in restitution,
consisting of: $1,585,125.00 for the costs of counsel for
current and former Duane Reade employees; fees and expenses of
Duane Reade's counsel, Paul, Weiss, Rifkind, Wharton & Garrison
LLP in the amount of $2,052,150.65; fees and expenses of
independent counsel Cooley Godward Kronish LLP in the amount of

$1,484,262.33; fees and expenses of forensic accountants AlixPartners LLP in the amount of $208,157.32; fees and expenses paid to auditors KPMG LLP and PricewaterhouseCoopers LLP in the amount of $493,000; and costs related to the Kroll Ontrack database in the amount of $430,852.22. Of that amount, $5,115,263.03 shall be paid to the victim of his offenses, Duane Reade. After Duane Reade is paid in full, Mr. Cuti shall pay Oak Hill, which compensated Duane Reade for its losses, $1,138,284.49. See 18 U.S.C. § 3664(j)(1). Defendant Cuti shall make restitution at the rate of twenty percent of his gross monthly income, beginning immediately.

SO ORDERED.

Dated: New York, New York
       August 30, 2016

_Deborah A. Batts_
Deborah A. Batts
United States District Judge